Paris Mason, plaintiff in error, *v.* George M. Richards *et al.*, defendants in error.

## *Error to Jersey.*

A. sold to B. a lot of land, and gave a bond for a deed on the payment of the purchase money, for which the vendee gave a note at twelve months. Three years after the note became due, it was paid, having been merged in a judgment at the suit of the vendor. One year afterwards, the vendee commenced a suit on the bond, obtained a judgment by default, and the damages were assessed. At the term when the default was entered, the vendor tendered a deed to the attorney in the suit, which was not received. The title of the vendor was good, but the land had depreciated in value. The vendor filed a bill in chancery to compel the acceptance of the deed and to enjoin the collection of the judgment, but did not bring the deed into Court, nor was a copy filed therewith as an Exhibit. At the hearing, the injunction, previously granted by the Master, was dissolved, and the bill dismissed: *Held*, that, by obtaining and collecting the judgment against the vendee, and by not appearing and defending the suit on the bond, and by permitting a year to elapse after receiving the purchase money from the vendee before tendering a deed, he had made his election, and considered the contract of sale as still subsisting, and, under all the circumstances, must abide the judgment against him: *Held*, also, that he should have brought his deed into Court to be placed within its control and made subject to its order, to have entitled himself to the relief prayed.

Bill in Chancery for an injunction, &c., in the Jersey Circuit Court, filed by the plaintiff in error against the defendants in error, and heard before the Hon. Samuel D. Lockwood, at the May term 1845, when the injunction, previously granted, was dissolved and the bill dismissed.

The substance of the bill is set forth in the Opinion of the Court.

The defendants in error not appearing in this Court, a default for non-joinder in error was entered against them, and the cause argued *ex parte* by

*W. Thomas*, for the plaintiff in error.

The plaintiff in error assumes the following positions, as applicable to the facts of the case:

1. One of the most frequent occasions on which Courts of Equity are asked to decree specific performance of con-

tracts, is when the terms for the performance and completion of the contract have not, in point of time, been strictly complied with.   2 Story's Eq. Jur. 85.

2. Courts have been in the habit of relieving where the party, from his own neglect, had suffered a lapse of time, or from other circumstances, could not maintain an action at law.   Ibid. 83–4, note 84.

3. Courts of Equity frequently decree specific performance, when the action at law has been lost by the default of the party seeking specific performance.   Ibid.

4. If there has not been gross negligence, and it is conscientious that the agreement be performed, Courts of Equity will interfere.   Ibid.

5. Time is not generally deemed, in Equity, to be of the essence of the contract, unless the parties have so expressly treated it, or it necessarily follows from the nature and circumstances of the contract.   Ibid. 87.

6. Courts of Equity will relieve the party vendor by decreeing a specific performance, where he has been unable to comply with the contract, according to the terms of it, from the state of his title at the time, if he comes within a reasonable time, and the defect has been cured.   Ibid.

7. Where delay in the performance is occasioned by the act of the vendee, and property has been injured by use, vendee shall be compelled to accept of deed, notwithstanding there has been a judgment upon the bond for breach in not conveying.   *Cook* v. *Hendricks*, 4 Monroe, 500.

8. Where vendee remains in possession, sustains no material injury, impairs the value of property, or, from the state of the title, the vendor is unable to convey, Courts will grant relief.   *Doss* v. *Cooper*, 2 J. J Marsh. 412.

9. Cases are numerous in which specific execution will be decreed in favor of vendor; as where vendee is in possession, and vendor, without any positive fault, has omitted, or, on account of the state of the title, has been unable to comply. *Craig* v. *Martin*, 3 do. 54.

10. Upon the question as to time, &c., see *Garnett* v. *Macon*, 6 Call, 370; *Brashear* v. *Gratz*, 6 Wheat. 578;

Mason *v.* Richards *et al.*

*Waters* v. *Travis*, 9 Johns. 466; *Moore* v. *Smedbury*, 8 Paige, 607.

In view of the law and facts of the case, the complainant is entitled to relief,

1. Because the contract does not show that the parties intended that time should be considered as of the essence of the contract; and

2. Because the parties have not treated the contract as one in the completion of which time was regarded as of any importance;

3. The vendees were in default upwards of four years.

4. The vendees, by their conduct, have waived all right to insist upon strict performance.

5. The vendees, by not asking for deed, nor prosecuting the bond for deed, acquiesced in the delay of its execution.

6. No injury has resulted to vendees from the default of vendor, and the facts of the case show that they were consenting to the delay.

7. The facts show that the judgment is for twice as much as the lot was worth, when it was paid for, or when the last payment was made.

8. The judgment was for the value of the lot at the time when the purchase money was payable, and deed should have been executed; whereas, according to the law as well as justice of the case, the judgment should have been for the value of the lot when the last payment was made. The judgment, therefore, is for a penalty.

The Opinion of the Court was delivered by

CATON, J.* In May, 1836, the defendants purchased of the complainant a lot in the town of Grafton, for $543·50, for which they gave their note at twelve months, and the complainant gave a bond to execute a deed on the payment of the purchase money. The complainant obtained judgment on that note, which was finally satisfied by the defendants in 1840.

---

*WILSON, C. J., did not sit in this case.

The defendants commenced a suit on their bond for a deed in 1841, and obtained a judgment by default, in 1842, and their damages were assessed at $500·00, and final judgment entered in April, 1842. At the term when the default was taken, the complainant tendered a sufficient deed to the attorney of the defendants, who declined accepting the same. The complainant made no defence to the suit on the bond. The case further shows that, at the time of the sale of the lot, and ever since, the complainant had a good title, and that neither party has been in the actual possession of the lot, or made any improvement thereon, or done any thing to depreciate its value. The lot has, however, much depreciated in value since the sale, owing to the general decline in town property. The lot was sold at its fair value, at that time, as other lots were selling. The complainant has been, and now is ready and willing to make a good title. The defendants never demanded a deed, nor did the complainant ever tender one, except as above stated. The above facts appear from the pleadings and an agreed statement of facts. This bill was filed on the 10th day of May, 1842, and prays that the defendants may be decreed to accept a deed of the lot, and for a perpetual injunction against the collection of the judgment obtained on the bond. It does not appear that the complainant brought into Court a deed with his bill. At the May term 1845, a decree was entered, dismissing the bill and dissolving the injunction which had been previously granted by the Master. The complainant has brought the case here by appeal for the purpose of reversing that decree.

Although the defendants neglected to pay the purchase money at the time stipulated, yet by prosecuting them at law, and receiving the amount afterwards, the complainant chose to consider the contract of sale as still subsisting instead of repudiating it, as he, perhaps, had a right to do, after the default on the part of the purchaser. On the receipt of the purchase money, the complainant was as much bound to make a deed as if it had been paid when due, even without demand, and failing to do so, he became immediately liable to a prosecution on his bond. By compelling

payment after the day, he waived any advantage which he might have had for the want of punctuality on the part of the purchasers. He could not receive the purchase money and still insist that the purchasers had no legal remedy against him on his bond. He was under the same liability that he would have been had they paid at the day, and failing to make a deed, became liable to an action on the bond. He was accordingly prosecuted, and allowed judgment to go against him by default. He now seeks to deprive the defendants of the fruits of that judgment, without showing that he had any legal defence to that suit, and without showing any pretence of an excuse why he did not apply to a Court of Chancery for leave to perform his agreement specifically, if the circumstances of the case would have authorized him to do so, before that agreement became merged in the judgment. By that judgment the bond became extinct, and the agreement between the parties was at an end. It is not the specific performance of an agreement alone that he now seeks, but he calls upon the Court first to resuscitate an agreement which has ceased to exist, and then enforce its specific execution. The agreement on the part of the complainant to make, and of the defendants to receive a deed, was destroyed by the act of the defendants and the acquiescence of the complainant, and it is asking too much of the Court to make an agreement for the parties, and then compel them to abide by and perform it. Had there existed any equitable circumstances which would have induced a Court of Chancery to have excused him for neglecting to make the deed for a year after he had received the purchase money, and become bound to make it, he should not have slept with supine indifference upon his rights, while he saw his adversaries prosecuting their legal claim, but should have applied to the Court without delay, and while the contract was yet in existence, and enjoined them from proceeding to judgment, and compelled them to have accepted a deed. He received the last payment in the fall of 1840, and neglected for a whole year to tender his deed, before he was sued for that default, and then made no attempt to place himself right, by performance, from the commencement of

the suit in October, 1841 till April, 1842, when judgment was obtained against him without objection. And even then, he contented himself with tendering a deed to the attorney, who was employed to prosecute that suit without going near the defendants at all; without making any excuse for his continued neglect; without making any, even the most formal objection to the judgment, and without making any application to the Court for relief. If parties will not attend to their own business, they ought not to call upon the Court to relieve them from the consequences of their own negligence, and especially in this most extraordinary way. Here was no misfortune, no unforeseen accident, no surprise, no circumstance beyond the control of the party, no fraud on the part of the defendants, and indeed no excuse of any sort shown, why that suit was allowed to proceed to judgment without objection, which can authorize the Court to interfere and do for the party what he neglected to do for himself. If time was not of the essence of the contract, as has been insisted, we think it is of the judgment, at least. The party cannot be allowed to stand by till he sees what judgment the party can get against him on his bond, and then take his choice, either to convey the land or pay the judgment, as he shall find most to his interest. He cannot be allowed to speculate upon the rights of his adversary in that way. He has made his election to let judgment go against him without objection, and he must now abide by it.

I will not set a limit to the powers of a Court of Equity by saying that circumstances might not exist which would authorize it to interfere, and grant the kind of relief which is sought by this bill. Indeed, we have been referred to a case where, under extraordinary circumstances, similar relief seems to have been granted; but a short examination of the circumstances of that case will show that it can be of but little avail to the complainant here. It is the case of *Cook's Adm'r.* v. *Hendricks,* 4 Monroe, 500. There, Cook had covenanted to convey to B. Hendricks an acre of land in six weeks, who immediately took possession, and used it for a brick yard for a year and a half, when he conveyed it to his son R. H., who continued the possession, digging and

moulding brick on it. Nearly a year after that, R. H. received an order, furnished him by Cook, upon the persons who held the legal title, to convey it to him, on which he might have got the title, but which he never presented. R. H., to whom the covenant had been assigned, commenced a suit at law thereon, without having offered to return the order for a deed, without having been disturbed in his possession, and after having greatly injured the lot by digging the earth and making brick thereof. Cook obtained title in himself, and tendered a deed to R. H. before a verdict at law. He refused to accept the title, and went on to assess the damages by default. Very promptly thereafter, Cook exhibited the bill and deed, as before tendered, and prayed for relief, which the Court granted. It would be a waste of time to point out the difference between the circumstances of that case and this. Besides, it does not appear that any final judgment was ever entered in the cause. It only appears that the damages were assessed on the judgment by default. But, admitting all that supposition, even, can claim for it, still it but establishes the power of the Court to grant such relief under very extraordinary circumstances. None such exist in the case before us.

It was decided by the same Court, in the case of *Oldham* v. *Woods*, 3 Monroe, 48, that where a party has neglected to make a conveyance of land according to his agreement, and judgment has been obtained at law on the agreement, he cannot get relief in equity, except under very extraordinary circumstances, sufficient to form an exception to the general rule. The same principle had been before established by the same Court in the case of *Edwards* v. *Handley,* Hardin, 602. Afterwards, however, in the same Court, in the case of *Woodson's Adm'r.* v. *Scott,* a strong doubt seems to have been thrown over the whole doctrine, although the question was not expressly decided. As before stated, we will not say that the Court may not have power to grant such relief, under some circumstances; but, at least, it should be very sparingly exercised, even under strong circumstances, of which there is an entire absence in this case.

There is another fatal objection to the relief prayed for in this case, and that is, that the complainant has not brought the deed into Court with his bill, which should always be done. It is necessary, in the first place, that the Court may see that it is such a deed as the party would have a right to demand; and again, that it may be within the immediate control of the Court, to be delivered over to the defendants, that they might have no further trouble in getting it, should their judgment be enjoined. Here, no exhibit is made even of a copy of the deed which is said to have been tendered to the attorney of the defendants in the suit at law, and whose business it was, I may remark, to obtain a judgment, and not a deed.

The decree of the Court below was proper, and is affirmed with costs.

*Decree affirmed.*